# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| KARTEAU OMAR JENKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV419-131 |
| | ) | |
| BRENT MINTON, CNT, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Karteau Omar Jenkins, proceeding *pro se* and *in forma pauperis*, brings this Complaint against Brent Minton of the Chatham-Savannah Counter Narcotics Team. Docs. 1 & 7. The Court previously granted plaintiff's Motion for Leave to proceed *in forma pauperis* (IFP), doc. 4, and has been provided all requested documentation, docs. 5 & 6. This court now screens the Complaint pursuant to 28 U.S.C. § 1915A.[1] For the following reasons, this Complaint should be **DISMISSED**.

---

[1] The Prison Litigation Reform Act of 1995 (PLRA), Pub. L. No. 104-134, 110 Stat. 1321-71, sets forth procedures governing the filing of complaints in federal court by prisoners and other detainees. In cases seeking redress from a government entity or its officials, PLRA requires a preliminary screening in order to "identify cognizable complaints" and to dismiss, prior to service, any complaint that is "frivolous, malicious, or fails to state a claim upon which relief may be granted" or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A.

## BACKGROUND

A Chatham County Superior Court Judge authorized the interception of communications associated with the telephone number XXX-XXX-XXXX. Doc. 1 at 14; doc. 7 at 1. During the surveillance, defendant notified the Atlanta Police Department of an intercepted conversation between plaintiff and Tonya Hailes in which plaintiff "instructed Tonya to get 56 of ole girl and that a customer was coming down the street in Atlanta."[2] Doc. 1 at 4, 14; doc. 7 at 2; doc 7-1 at 5–6. Both plaintiff and Hailes were in Atlanta, Georgia at the time of the intercepted conversation. Doc. 7 at 2. Plaintiff alleges that Hailes was not identified as a subject of the surveillance order or its extension.[3] Doc. 1 at 14; doc. 7 at 1. Based, at least in part, on the intercepted conversation between Hailes and plaintiff, a warrant was obtained for the search of 974 Beckwith Street in Atlanta. Doc. 7 at 3, 5–10. Plaintiff alleges violations of the Fourth Amendment and the Federal Wiretap Act

---

[2] Plaintiff refers to a "Tatony Hailes" and "Tony" in his amended Complaint. Doc. 7 at 1, 3. The Court construes both to refer to Tonya Hailes.

[3] Plaintiff failed to provide a copy of the wiretap authorization order to confirm the scope and nature of the approved surveillance.

("Title III") resulting in mental stress[4] and reputational damages.[5]  Doc. 1 at 6.

## ANALYSIS

The Court construes the alleged Fourth Amendment and Title III violations as arising out of defendant Minton's exceeding the scope of the wiretap authorization and the resulting search of the 974 Beckwith Street property.  Each of these causes of action suffers from at least one fatal defect.

---

[4]  Plaintiff does not articulate the type of "mental stress" he alleges, or if it occurred prior to or after his arrest.  To the extent any mental distress occurred while in custody, plaintiff would be precluded by statute from recovering more than nominal damages, absent a showing of an associated physical injury.  42 U.S.C. § 1997e(e) ('[n]o Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act."); *see also Brooks v. Warden*, 800 F.3d 1295, 1307–308 (11th Cir. 2015) ("nothing in § 1997e(e) prevents a prisoner from recovering *nominal* damages for a constitutional violation without a showing of physical injury.").

[5]  Plaintiff identifies 18 U.S.C. § 3501(e) (admissibility of confessions) as a basis for his § 1983 action.  Doc. 1 at 4.  The Complaint, however, makes no reference to a confession and provides no factual support for this claim.  To state a claim upon which relief can be granted, the allegations of the complaint must "state a claim for relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The general reference to § 3501(e) might suggest a deprivation of rights, but as plaintiff fails to specify even what he considers to be the offending confession—a statement given during the course of the challenged surveillance or an acknowledgement of culpability given subsequent to arrest—the Court can discern neither an injury nor a cognizable § 1983 claim based on 18 U.S.C. § 3501.  As such, this claim should be **DISMISSED**.

I.   **Timeliness**

As an initial matter, all of plaintiff's claims appear to be time-barred. The statute of limitations for 42 U.S.C. § 1983 claims "is that which the State provides for personal-injury torts." *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (cite omitted). Under Georgia law, the statute of limitations for such claims is two years. O.C.G.A. § 9-3-33; *see Williams v. City of Atlanta*, 794 F.2d 624, 626 (11th Cir. 1986). Generally, the statute of limitations for § 1983 claims begins to run when facts supporting the cause of action are or should be reasonably apparent to the plaintiff. *Brown v. Ga. Bd. of Pardons & Paroles*, 335 F.3d 1259, 1261 (11th Cir. 2003) (*per curiam*). Similarly, claims under Title III must also be brought within two years of plaintiff first having "a reasonable opportunity to discover the violation." 18 U.S.C. § 2520(e).

In addition to the § 1983 and Title III claims, Plaintiff also vaguely alleges claims of "defamation of personal standards" and "defamatory [sic] of reputation as a [sic] ordained minister." Doc. 1 at 6. Defamation alone is not a colorable claim for relief under § 1983. *Paul v. Davis*, 424 U.S. 693, 711–12 (1976); *see also Walker v. Atlanta Police Dep't Pub. Affairs Unit*, 322 Fed. App'x 809, 811 (11th Cir. 2009) (public media

advisory labeling plaintiff as a murder suspect, though possibly defamatory, was not grounds for relief under § 1983). Plaintiff, however, might attempt to pursue a defamation claim under state tort law. 28 U.S.C. § 1367(a). Under Georgia law, "injuries to the reputation . . . shall be brought within one year after the right of action accrues." O.C.G.A. § 9-3-33.

The wiretaps and search relevant to plaintiff's claims occurred during February and March 2017. Doc. 1 at 14. The Complaint specifically points to conversations occurring on February 21, 23, and 24, 2017, as supporting the Fulton County search warrant. *Id.* The search warrant for the 974 Beckwith Street property was issued on March 20, 2017. Doc. 7 at 3. Plaintiff, however, did not file his Complaint until June 17, 2019, more than two years after the alleged offenses. Doc. 1. As such, it appears that plaintiff's § 1983, Title III, and any state-law defamation claims are all untimely and should be **DISMISSED**.

As noted above, the clock begins to run for § 1983 and Title III claims when the alleged violation is discovered or should have reasonably been discovered. Though the Court is skeptical that plaintiff learned of the physical search of his property after it occurred, it recognizes the

possibility that plaintiff may have first become aware of at least some of the alleged violations at a date later than when they occurred. A *pro se* plaintiff is generally granted at least one opportunity to amend a complaint. *Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015) (*citing Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 & n. 1 (11th Cir. 2002) (*en banc*)) ("When a more carefully drafted complaint might state a claim, a district court should give a *pro se* plaintiff at least one chance to amend the complaint before the court dismisses the action."); *see also* Fed. R. Civ. P. 15(a)(2) (courts should grant leave to amend "freely . . . when justice so requires"); *Seckinger v. Bank of Am., N.A.*, No. CV415-306, 2016 WL 1381814 at *2 (S.D. Ga. Apr. 6, 2016). Nevertheless, the further defects, discussed below, would make any such amendment futile.

## II. Title III Claims

Even if plaintiff's Title III claims were not time-barred, they should be dismissed for failure to state a claim. With regard to his contention that defendant exceeded the geographic scope of the wiretap authorization, both statute and state law provide for the geographic scope

encountered in this case. 18 U.S.C. § 2518(3) ("authorizing or approving interception of wire, oral, or electronic communications within the territorial jurisdiction of the court in which the judge is sitting (and outside that jurisdiction but within the United States in the case of a mobile interception device authorized by a Federal court within such jurisdiction)"); O.C.G.A. § 16-11-64(c) ("Such warrant shall have state-wide application and interception of communications shall be permitted in any location in this state."). The territorial limitations suggested by plaintiff are not an intended element of the Title III. S*ee Adams v. Lankford*, 788 F.2d 1493, 1498–99 (11th Cir. 1986) (finding that territorial jurisdiction limitations were not Congress' core concern in passing Title III and would cut against the goal of centralized decision making). Even if the order was limited to the jurisdiction of Chatham County, the Supreme Court has recognized that it is only necessary for the caller, recipient, or the "listening post" to be located within the territorial jurisdiction of the issuing court. *Dahada v. United States*, ___ U.S. ___, 138 S. Ct. 1491, 1499 (2018) (finding wiretaps properly authorized under statute when conducted pursuant to an order of the United States District Court for the District of Kansas and all calls either

involved a party within the state of Kansas or were monitored from within the state). While Plaintiff pleads that Hailes and he were located in Atlanta at the time of the relevant telephone calls, he does not plead facts relating to the physical location of the "listening post.". Doc. 7 at 2. However, the issue was raised in the prior criminal case and the Court takes notice that the challenged monitoring occurred within Chatham County. *United States v. Allen, et. al.*, 4:17-cr-208 at doc. 591 (adopting the Report and Recommendation, doc. 588 at 7–8). As such, plaintiff has failed to sufficiently plead that the monitoring of those calls in which the participants were located outside of Chatham County violated Title III.

Plaintiff's remaining allegations, as they relate to Title III, allege a failure to minimize pursuant to 18 U.S.C. § 2518(5).[6] He specifically points to conversations involving Hailes that did not directly involve the Savannah conspiracy. The minimization requirement does not forbid the

---

[6] Authorization for a wiretap must require that surveillance "be conducted in such a way as to minimize the interception of communications not otherwise subject to interception." The Government is not required to cease interception of all non-pertinent calls; only to take steps to minimize their collection. *See United States v. Bryant*, 2014 WL 317694 at *6 (S.D. Ga. Jan. 29, 2014) (citing *United States v. Armocida*, 515 F.2d 29, 42 (3d Cir 1974)). Compliance requires reasonableness based on all facts and circumstances, including "number of nonpertinent conversations intercepted, the location of the surveillance, and the nature of the investigation." *U.S. v. Van Horn*, 789 F.2d 1492, 1501 (11th Cir. 1986) (citing *Scott v. United States*, 436 U.S. 128, 139–40 (1978)).

collection of all nonrelevant conversations, but only requires law enforcement to "conduct the surveillance in such a manner as to 'minimize' the interception of such conversations." *Scott v. United* States, 436 US. 128, 140 (1978). In determining whether a good faith, reasonable effort to minimize was attempted, courts have considered three factors: (1) the nature of the criminal activity under investigation; (2) the reasonable expectation as to the content of the intercepted calls; and (3) the degree of judicial supervision. *United States. v. Hyde*, 574 F.2d 856, 869 (5th Cir. 1978); *see also e.g., United States v. Armocida*, 515 F.2d 29, 44–45 (3d Cir. 1975) (noting that the three identified factors are "crucial and must be considered in any review of minimization," but acknowledging that other factors may be relevant on a case-by-case basis); *United States v. Clerkley*, 556 F.2d 709, 716 (4th Cir. 1977), cert. denied, 436 U.S. 930 (1978) (recognizing that the identified factors have been adopted by multiple federal courts to determine the reasonableness of minimization efforts); *United States v. Feldman*, 606 F.2d 673, 678 (6th Cir. 1979) (same); *United States v. Quintana*, 508 F.2d 867, 874–75 (7th Cir. 1975) (defining each factor and its relevance to minimization);

*United States v. Daly*, 535 F.2d 434, 441–42 (8th Cir. 1987) (same). In this case, there was no failure to minimize.[7]

First, as defendant was investigating a criminal conspiracy, he was permitted to exercise a greater degree of latitude in surveillance. *Hyde*, 574 F.2d at 574 ("It was appropriate for agents investigating this widespread conspiracy to monitor calls more extensively than might have been appropriate in a simpler case."); *see also United States v. Van Horn*, 789 F.2d 1492, 1501–02 (11th Cir. 1986) (deviation from the conditions of a wiretap application requiring monitoring to cease when voice identification indicated that conversants were not principals in a drug

---

[7] The Eleventh Circuit has recently warned that pleadings are most often undone by pleading too little, but may, in some circumstances, be defeated when the pleader "'has pleaded too much and has refuted his own allegations by setting forth the evidence relied on to sustain them.'" *Gill, as Next Friend of K.C.R. v. Judd*, ___ F.3d ___, 2019 WL 5304078, at * 2 (11th Cir. Oct. 21, 2019) (quoting *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940)). As the former Fifth Circuit explained, in some cases, a complaint "is plagued not by what it lacks, but by what it contains. [Such a circumstance occurs when a]ll of the paths to relief which the pleading suggests are blocked by the allegations and the attached documents themselves, without more.'" *Id.* (emphasis omitted) (quoting *Gen. Guar. Ins. Co. v. Parkerson*, 369 F.2d 821, 825 (5th Cir. 1966)). The factor analysis conducted below relies exclusively on allegations in the Complaint and documents from plaintiff's criminal case, which Jenkins incorporates into his Complaint by reference. *See* doc. 1 at 9 (stating that the instant "civil complaint came from a criminal case," and citing to specific docket entries in "case 4:17-cr-00208-WTM-CLR."). Accordingly, the information contained in those entries is properly considered at the screening stage. *See, e.g., Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014) ("documents attached to a complaint or incorporated in the complaint by reference can generally be considered" in ruling on a motion to dismiss).

conspiracy was not a failure to minimize when a goal of surveillance is to identify participants in a conspiracy); *see also United States v. Torres*, 908 F.2d 1417, 1424 (9th Cir. 1990) (noting that allowing a wide degree of latitude to monitoring officers during surveillance of a conspiracy to distribute drugs is necessary). Additionally, plaintiff's use of narcotics related terms, such as "ole girl," doc. 7 at 2, justified more extensive monitoring. *See United States v. Cantu,* 625 F. Supp. 656, 676 (N.D. Fla. 1985) ("conversants' use of jargon and code words for narcotics, such as 'eight-ball' (meaning ⅛ ounce of cocaine) and 'white puppies' (meaning 1 ounce baggies of cocaine), necessitated more extensive monitoring of conversations." (citing *United States v. James*, 494 F.2d 1007, 1019 (D.C. Cir. 1974)). Furthermore, there is no need for law enforcement to minimize surveillance of conversations relating to criminal activity. *See United States v. Killingsworth*, 117 F.3d 1159, 1166–67 (10th Cir. 1997) (as 18 U.S.C. § 2518(5) requires minimization of communications not otherwise subject to interception, the recording of drug-related conversations between not listed individuals was proper).

Second, the expectations of law enforcement and the parameters for screening non-pertinent calls evolve during the course of surveillance

based on the information collected. *Hyde*, 574 F.2d at 870. If, for example, defendant had surveilled prior non-pertinent calls between plaintiff and Hailes, it would have been necessary for purposes of minimization to cease monitoring once Hailes was identified as a participant and the context of the call was determined irrelevant. In reality, however, earlier calls and text messages with Hailes evidenced illicit activities, such as instructions to retrieve a prohibited firearm and illicit cash. Doc 7-1 at 9.

Finally, plaintiff concedes to at least some degree of judicial supervision in acknowledging the extension of the authorization. Doc. 1 at 14; doc. 7 at 1–2. Authorizing judges may supervise surveillance by requiring regular status reports. 18 U.S.C. §2518(6). Regular review and reporting are suggestive of proper minimization as they "help[ ] to safeguard the rights of individuals affected by the wiretap." *Cantu,* 625 F. Supp. at 676. Plaintiff has not alleged that surveilling officers failed to provide regular reports or that reports were disregarded by the authorizing court. The Court, however, recognizes that an extension of the authorization, supported by an affidavit of Minton, was granted by the supervising judge less than thirty days after the initial authorization

order. Doc. 7 at 1–2. Absent any argument to the contrary, this points to at least some degree of judicial supervision. Therefore, plaintiff's Title III claims should be **DISMISSED**.

### III. Fourth Amendment Claims (42 U.S.C. § 1983)

Plaintiff's Fourth Amendment claims should also be dismissed. The Fourth Amendment protects against *unreasonable* searches and seizures. U.S. CONST., amend IV. As the use of electronic surveillance is a "search" within the context of the Fourth Amendment, *Berger v. New York*, 388 U.S. 41, 51 (1967), a § 1983 claim for its violation requires factual allegations supporting that the surveillance was unreasonable. A search is reasonable when conducted pursuant to a warrant or other court authorization or when qualifying for an established exception. *United States v. Prevo*, 435 F.3d 1346, 1346 (11th Cir. 2006). Even when authorized, exceeding the scope of the authorization can violate the Fourth Amendment. *Cf. Horton v. California*, 496 U.S. 128, 140 (1990) ("If the scope of the search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional without more."). Plaintiff does not challenge the issuance of the wiretap

authorization.[8] Rather, he alleges that defendant's monitoring exceeded the scope of the authorization in three ways: (1) it exceeded the geographic scope; (2) it involved an unnamed individual; and (3) it involved conversations relating to a criminal conspiracy separate and distinct from the crime listed in the authorization. Doc 1 at 14, 15; doc. 7.

As with his statutory arguments, Plaintiff's Fourth Amendment challenge to the monitoring of telephone conversations occurring outside of Chatham County is unpersuasive. Cellular telephones are, by their nature, capable of free movement between judicial jurisdictions. Where it is impossible to specify an exact location to be monitored prior to surveillance, other forms of description will satisfy the Fourth Amendment. *United States v. Silberman*, 732 F.Supp. 1057, 1062 (S.D. Cal. 1990) (*citing United States v. Karo*, 468 U.S. 705 (1986)). In the context of wiretaps, this is accomplished through the identification of a telephone number. *United States v. Donovan*, 429 U.S. 413, 427, n. 15 (1977). As with Title III and the Georgia Code, the monitoring of calls

---

[8] The Court previously found the wiretap authorizations satisfied the statutory and constitutional requirements. *United States v.* Allen, 4:17-cr-208, doc. 588 at 7.

from within Chatham County was sufficient to satisfy the Fourth Amendment. *See United States v. Jackson*, 849 F.3d 540, 552, n. 9 (3d Cir. 2017) (rejecting the argument that the listening post theory violates the Fourth Amendment). As such, the monitoring of telephone calls between speakers outside of Chatham County did not violate the Fourth Amendment.

Plaintiff's contention that intercepting calls involving Hailes exceeded the scope of the authorization because she was not expressly named also fails. The Court charitably construes this claim as a challenge to the specificity requirement of the authorization.[9] In the context of wiretaps, the Fourth Amendment's requirement for specificity of the place to be searched and the persons or things to be seized is "satisfied by identification of the telephone line to be tapped and the particular conversations to be seized." *Donovan*, 429 U.S. at 427, n. 15. "[N]o Fourth Amendment values are served by a sweeping identification requirement." *Id.* at 443. Therefore, the authorization need not specifically name all persons likely to participate in the surveilled

---

[9] The Court notes that Plaintiff lacks standing to bring a claim asserting a violation of Hailes' Fourth Amendment rights. The Fourth Amendment creates personal rights that cannot be vicariously asserted. *Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978).

conversations. *Id.*; *see also United States v. Woodley*, 2009 WL 3415214 *1 (S.D. Ga. Oct. 22, 2009) ("Neither the Constitution nor Title III requires that every participant in an intercepted communication be named in the wiretap application."). Plaintiff has conceded that the wiretap authorization identified the telephone number XXX-XXX-XXXX and that the conversation with Hailes occurred over this telephone line. Doc. 1 at 14; doc. 7 at 1, 2. As such, the facts as pleaded do not allege a violation of the Fourth Amendment by monitoring the call merely because of Hailes' participation.

Even if this conversation were beyond the explicit scope of the authorization, it would fall under the Fourth Amendment's plain view exception. Courts have long recognized that the Fourth Amendment does not prevent law enforcement, when conducting a lawful search, from seizing evidence of another crime left in plain sight. *See Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971) ("It is well established that under certain circumstances the police may seize evidence in plain view without a warrant."). This exception has also been applied to evidence of other crimes overhead during the execution of a wiretap. *See United States v. Sklaroff*, 323 F. Supp. 296, 307 (S.D. Fla. 1971) (analogizing the plain

view doctrine to conclude that the collection of conversations of other crimes during a Title III wiretap does not demonstrate a lack of particularity). Plaintiff has conceded that a wiretap authorization was issued for the relevant telephone line. Doc. 7 at 1. He has not pleaded any facts even suggesting that that Defendant took any action beyond the monitoring of the telephone line to overhear evidence of a purportedly separate drug conspiracy or that the illegality of the conversation was not immediately apparent. As such, the monitoring of plaintiff's call with Hailes concerning the Atlanta conspiracy was permissible. Therefore, plaintiff's Fourth Amendment claims regarding the execution of the wiretap should be **DISMISSED**.

Plaintiff has also challenged the sufficiency of the search warrant for the 974 Beckwith Street property. A search warrant is supported by probable cause when "the totality of the circumstances set forth in the affidavit provides sufficient information for a magistrate to determine that 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Gonzales*, 940 F.2d 1413, 1420 (1991) (quoting *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983)). Plaintiff alleges that the search warrant was based on improperly

obtained information. Doc. 7 at 2. Information obtained through an unlawful search or seizure cannot be used to establish probable cause in a subsequent search. *United States v. Hunt,* 496 F.2d 888, 894 (1974).

As discussed above, plaintiff has failed to plead facts implying that the information provided by defendant upon which the search warrant was based violated Title III or the Fourth Amendment. Even if the challenged communications were excluded, the other sources supporting the affidavit are sufficient to establish probable cause, including surveillance of the property, confidential informants, GPS data, Pen Register Trap and Trace data, public utility records, and other intercepted telephone calls and text messages. Doc. 7-1 at 2–6; *see Hunt*, 496 U.S 894–95 (considering affidavit redacted of offending information to determine if it otherwise would have established probable cause). Therefore, the search warrant did not violate the Fourth Amendment and plaintiff's claim should be **DISMISSED**.

### IV.  Defamation

Though defamation is not a colorable cause of action under § 1983, district courts can exercise "supplemental jurisdiction over all claims that are so related to claims in the action within [the court's] original

jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Nevertheless, when a court dismisses all "claims over which it has original jurisdiction," as is the case here, it "may decline to exercise supplemental jurisdiction." *Id.* at (c). To the extent that the Court could hear any defamation claim under its supplemental jurisdiction, and such claim is not time-barred, it should decline to do so. Plaintiff remains free to refile his state law claims with the state courts.

## CONCLUSION

As Jenkins has failed to state a claim on which relief can be granted, his federal claims should be **DISMISSED**. The Court declines to reach the state law claim and defamation and leaves plaintiff the opportunity to pursue it before a more appropriate venue. This report and recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time

to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this 9th day of January, 2020.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA